1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DAVID DANIELS,

11            Plaintiff,                    No. CIV S- 03-400 MCE GGH P

12        vs.

13   W. YOUNT, et al.,                      ORDER &

14            Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17            Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18   1983.  Pending before the court is plaintiff's November 15, 2004 motion for summary judgment

19   and plaintiff's December 16, 2004 motion to compel production of certain videotapes and

20   documents.

21   Plaintiff's Allegations

22            This action proceeds on the second amended complaint (SAC), filed on May 21,

23   2003, as modified by orders filed on November 13, 2003,  August 10, 2004 and October 12,

24   2004.[1]  Thus, defendants remaining, employees at California State Prison (CSP) - Solano, are

25   _____

26        [1] The California Department of Corrections was dismissed as a defendant by Order filed
     on November 13, 2003, adopting the August 22, 2003 Findings and Recommendations.

                                      1

1    Yount, Ciraulo, Sandy, Mancill, Jackson, C.A. Smith, K. Smith, Abella, Williams and in the case

2    of defendant Obedoza, the only claim remaining is that plaintiff received inadequate medical care

3    from defendant Obedoza because he failed to assure that plaintiff received prescribed pain

4    medication following the March 2, 2003 incident.  The court will borrow from its prior

5    renderings of the second amended complaint, taking into account the most recent modifications.

6              Plaintiff alleges that, on November 26, 2002, in retaliation for plaintiff's past

7    misbehavior, defendant C/O W. Yount subjected him to cruel and unusual punishment and failed

8    to protect him from physical abuse when he handcuffed plaintiff's hands behind his back and

9    used force to hold plaintiff with a "stiff-arm[ed] grip" at another inmate's cell door to allow the

10   inmate to throw urine on him.  SAC, p. 5.  While plaintiff was being exposed to the unnamed

11   inmate's "dangerous bodily fluids," defendant Yount used physical force to hold plaintiff,

12   causing plaintiff to lose his balance.  SAC, pp. 5-6.  Defendant C/O J. Ciraulo stood by silently

13   during the violent assault, failing to take reasonable steps to protect plaintiff, demonstrating

14   deliberate indifference to his safety.  SAC, p. 6.

15             On March 2, 2003, defendant E. Sandy used excessive force on plaintiff when

16   plaintiff became "allegedly" disruptive in the law library.  SAC, p. 9.  On the basis of a "minor

17   rule infraction," defendant Sandy ordered defendant D. Mancill to use force to remove plaintiff's

18   tennis shoes, shoes for which a doctor had issued a medical chrono for plaintiff.  Id.  Defendant

19

20   Correctional Officer Bean was dismissed from this action without prejudice by Order filed on
     August 10, 2004, adopting Findings and Recommendations, filed on April 26, 2004.  Defendants
21   Prim, Freitas, Lamoreaux, Norris, Evans, Romero, Harmer, Brown, Carey and Alameida were
     dismissed, as well as all claims against defendant Obedoza with the exception of the specific
22   inadequate medical care claim regarding plaintiff's not receiving prescribed pain medication after
     the March 2, 2003 incident, by Order filed on October 12, 2004, adopting the Findings and
23   Recommendations, filed on August 18, 2004.  The court notes that in their November 8, 2004
     answer, counsel for defendants includes the name of defendant Primm; however, this defendant
24   had been previously dismissed.  See Order filed October 12, 2004 (defendant Primm's name
     spelled as "Prim" therein).  In footnote 2 of their answer, defendants do note that defendant
25   "Prim," inter alia, was dismissed and state that their answer is filed on behalf of each remaining
     defendant but, apparently inadvertently, omit the name of defendant Williams, who also remains
26   a party.  The court will disregard the omission in the footnote.

1  Sandy used the rule infraction as a pretext for inflicting physical punishment on plaintiff when

2  he, along with defendants C/Os L. Abella, K. Smith, A.R. Jackson, C. A. Smith[2] and T.

3  Williams, used their hands to push, pull, grab and throw plaintiff into a steel holding cage the

4  size of a phone booth in such a manner as to deliberately cause plaintiff harm.  SAC, p. 10.  Their

5  actions in throwing or forcing plaintiff into the metal cage caused plaintiff to sustain a three-inch

6  laceration to his head, requiring 11 stitches.  SAC, pp. 10-11.  Defendants Sandy, Abella, K.

7  Smith, A.R. Jackson, C.A. Smith and T. Williams observed plaintiff bleeding from a head injury,

8  but left him bleeding in the cage for 45 minutes to an hour.  SAC, pp. 11-12.  Instead of making

9  sure plaintiff received emergency medical care, these defendants "made every effort to sanitize

10  the incident," while plaintiff was suffering in the cage.  SAC, p. 12.

11         Defendant Obedoza provided inadequate medical care because after prescribing

12  pain medication for plaintiff, he failed to assure that plaintiff received it.  SAC, p. 14.

13         Plaintiff seeks monetary damages and injunctive relief.  Plaintiff's notice of

14  change of address to Corcoran State Prison occurred by December 3, 2003, as indicated by

15  plaintiff's filing in this court of a notice of change of address.  See Notice of Change of Address,

16  file-stamped December 8, 2003 and signed on December 3, 2003.  When an inmate seeks

17  injunctive relief concerning an institution at which he is no longer incarcerated, his claims for

18  such relief become moot.  See  Sample v. Borg, 870 F.2d 563 (9th Cir. 1989); Darring v.

19  Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986).  See also Reimers v. Oregon, 863 F.2d 630, 632

20  (9th Cir. 1988).  Plaintiff seeks injunctive relief in general without specifying what form any

21  such relief should take; moreover, his transfer since the filing of this lawsuit would appear to

22  moot any such claims.  There has been no showing by plaintiff that he is likely to be returned to

23  \\\\\

24

25         [2] Defendants alternate between identifying this defendant as either "C. A. Smith" or "G.
    Smith."  In the answer, this defendant is "G. Smith"; in their opposition to plaintiff's motion for
26  summary judgment, he is "C.A. Smith."

1   CSP-Solano.  The court, therefore, will recommend dismissal of plaintiff's vaguely stated claims

2   for injunctive relief as mooted by his transfer to a different institution.

3   Motion for Summary Judgment

4         Plaintiff moves for summary judgment without setting forth the parts of the record

5   on which he relies, without clearly setting forth a separate statement of undisputed facts; nor does

6   he demonstrate the lack of any genuine issue of material fact remaining.  See plaintiff's motion

7   for summary judgment.  Rather, plaintiff simply largely reiterates his allegations and cites

8   authority for the indisputable proposition that inmates may not be subjected to cruel and unusual

9   punishment.  It is not enough for plaintiff to simply refer generally to the record, including

10  unspecified exhibits, in the case file, to establish that there is no genuine issue remaining for trial

11  and that he is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Local Rule 56-

12  260.

13                    *Legal Standard for Summary Judgment*

14         Summary judgment is appropriate when it is demonstrated that the standard set

15  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

16  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

17  as a matter of law."  Fed. R. Civ. P. 56(c).

18         Under summary judgment practice, the moving party

19

20         always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions

21         on file, together with the affidavits, if any," which it believes
           demonstrate the absence of a genuine issue of material fact.

22

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

24  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

25  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

26  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

1  after adequate time for discovery and upon motion, against a party who fails to make a showing

2  sufficient to establish the existence of an element essential to that party's case, and on which that

3  party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552.  "[A] complete

4  failure of proof concerning an essential element of the nonmoving party's case necessarily

5  renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be

6  granted, "so long as whatever is before the district court demonstrates that the standard for entry

7  of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

8          If the moving party meets its initial responsibility, the burden then shifts to the

9  opposing party to establish that a genuine issue as to any material fact actually does exist.

10  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356

11  (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing

12  party to establish that a genuine issue as to any material fact actually does exist. See Matsushita

13  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In

14  attempting to establish the existence of this factual dispute, the opposing party may not rely upon

15  the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

16  form of affidavits, and/or admissible discovery material, in support of its contention that the

17  dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.

18  11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

19  might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

20  Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

21  Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

22  evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool

23  v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

24          In the endeavor to establish the existence of a factual dispute, the opposing party

25  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

26  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

5

1    versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

2    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3    genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

4    56(e) advisory committee's note on 1963 amendments).

5              In resolving the summary judgment motion, the court examines the pleadings,

6    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

8    477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

9    placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

10   at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

11   opposing party's obligation to produce a factual predicate from which the inference may be

12   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

13   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

14   party "must do more than simply show that there is some metaphysical doubt as to the material

15   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

16   nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct.

17   1356 (citation omitted).

18              *Opposition*

19              Defendants are correct that plaintiff's motion does not meet his initial burden,

20   pursuant to Fed. R. Civ. P. 56(c), as the court has noted above.  Alternatively, defendants also

21   aver that plaintiff filed his dispositive motion about a month after defendants' motion to dismiss

22   had been granted in part and denied in part, and a week after they filed their answer on behalf of

23   the remaining defendants before defendants had had any adequate time to conduct discovery.

24   \\\\\

25   \\\\\

26   \\\\\

1  <u>See</u>, decl. of S. Lusich in support of opp. to msj., ¶¶ 3-8.  Defendants therefore also, or

2  alternatively, move for a continuance of the motion pursuant to Fed. R. Civ. P. 56(f).[3]

3          Because the court has found plaintiff's motion for summary judgment to be

4  defective in its lack of conformity with the requirements of Fed. R. Civ. P. 56(c); however, the

5  undersigned will recommend denial without prejudice of plaintiff's motion, rather than simply

6  continuing the motion.

7  <u>Motion to Compel</u>

8          Any party has the right to discovery of "any matter, not privileged, that is relevant

9  to the claim or defense of any party...." ; thus, the scope of discovery under Fed. R.Civ. P.

10  26(b)(1) is broad.  Discovery may be sought of relevant information not admissible at trial "if the

11  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Id</u>.

12  The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or

13  can be obtained from another source "that is more convenient, less burdensome, or less

14  expensive;" or if the party who seeks discovery "has had ample opportunity by discovery ...to

15  obtain the information sought;" or if the proposed discovery is overly burdensome.  Fed. R.Civ.

16  P. 26(b)(2)(i)(ii) and (iii).

17          Plaintiff moves for production of the following:

18          1.  Videotape interviews or tape recordings/audio of defendants W.
            Yount, J. Ciraulo, D. Mancill, L. Abella, T. Williams, K. Smith,
19          A.R. Jackson, C.A. Smith, E. Sandy  and Dr. Obedoza.

20          2.  Videotape/ audio of plaintiff D. Daniels - P 55808 interviews.

21          3.  Watch Commander log books dated Nov. 23, 2002-Nov. 26,
            2002 and March 3, 2003.

22

23

24          [3] "Should it appear from the affidavits of a party opposing the motion that the party
cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the
25  court may refuse the application for judgment or may order a continuance to permit affidavits to
be obtained or depositions to be taken or discovery to be had or may make such other order as is
26  just." Fed. R. Civ. P. 56(f).

1    4.  (17) photos labeled CDC # 837 C 1 No. # C.S.P. SF 2-03-03-
0058.

2

5.  Internal Affairs Reports and investigative files of all defendants.

3

6.  Training materials for use of force/ post orders dated Nov. 2002
4    - March 2003.

5

6    Exhibit to plaintiff's declaration in support of request to compel production.

7            Plaintiff filed a copy of a United States District Court subpoena form in a civil

8    case addressed to the CSP-Solano litigation coordinator, containing the list of items for which he

9    sought production on December 1, 2004, a subpoena not identified as having issued from this

10   court.  Plaintiff states that the litigation coordinator has failed to produce the above items in

11   response to a subpoena that he served pursuant to Fed. R. Civ. P. 45.  Plaintiff's decl. in support

12   of motion to compel, p. 5.  In opposition, defendants submit their letter in response, dated

13   December 9, 2004, stating that the putative subpoena was unenforceable because it was neither

14   properly issued by the court nor by an attorney, was not properly served, was vague, ambiguous

15   and overbroad, and called for irrelevant information.  Opp., Exhibit A.

16           The subpoena form filed by plaintiff, and allegedly served, is, in fact, defective,

17   pursuant to Fed. R. Civ. P. 45.  A subpoena requested by a party may issue from the court, signed

18   by a court clerk, or an attorney may issue and sign a subpoena on the court's behalf, if the

19   attorney is authorized to practice before the court.  Fed. R. Civ. P. 45(a)(3).  Moreover, service of

20   a subpoena "upon a person named therein shall be made by delivering a copy thereof to such

21   person...."  Fed. R. Civ. P. 45(b)(1).

22           Plaintiff's motion to compel production must be denied.  Plaintiff may wish to

23   request a court-issued subpoena that he then directs to the appropriate custodian of records.  Or

24   he may seek production from defendants pursuant to Fed. R. Civ. P. 34.[4]   Plaintiff should

25

26   [4]"Any party may serve on any other party a request (1) to produce and permit the party
making the request, or someone acting on the requestor's behalf, to inspect and copy, any

8

1    proceed to seek the production immediately and should tailor his requests so that they are

2    evidently seeking information "reasonably calculated to lead to the discovery of admissible

3    evidence." Fed. R. Civ. P. 26(b)(1).  On the other hand, defendants must do more than simply

4    short circuit plaintiff's efforts at discovery, refusing to produce anything altogether on the basis

5    of plaintiff's failure to conform fully with the Federal Rules of Civil Procedure, mindful that pro

6    se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner,

7    404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972).

8              Defendants are also cautioned, assuming plaintiff proceeds to draft and serve

9    production requests, pursuant to Fed. R. Civ. P. 34, and assuming thereafter defendants seek to

10   invoke any privilege, that the Supreme Court has long noted that privileges are not favored.

11   Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1928 (1996) (citing United States v. Bryan,

12   339 U.S. 323, 331, 70 S. Ct. 724, 730 (1950).   Privileges are narrowly construed, because they

13   impede the full and fair discovery of the truth, Eureka Financial Corp. v. Hartford Acc. and

14   Indemnity Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991), and that the party asserting the privilege

15   has the burden to establish its applicability is an undisputed proposition; see, e.g., Tornay v.

16   United States, 840 F.2d 1424, 1426 (9th Cir.1988)("[t]he party asserting an evidentiary privilege

17   has the burden to demonstrate that the privilege applies to the information in question"); United

18   States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

19             Accordingly, IT IS ORDERED that plaintiff's motion to compel production, filed

20   on December 16, 2004, is denied.

21   \\\\\

22   \\\\\

23

24   designated documents (including writings, drawings, graphs, charts, photographs, phono records, and other data compilations from which information can be obtained...by the respondent through detection devices into reasonably usable form), or to inspect and copy, test, or sample any

25   tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served...." Fed. R.

26   Civ. P. 34(a)(1).

1    IT IS HEREBY RECOMMENDED that:

2    1.  Plaintiff's November 15, 2004 motion for summary judgment be denied

3 without prejudice;

4    2.  Plaintiff's claims for injunctive relief be dismissed from this action as moot;

5 and

6    3.  This action proceed against defendants only as to plaintiff's claims for money

7 damages.

8    These findings and recommendations are submitted to the United States District

9 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

10 days after being served with these findings and recommendations, any party may file written

11 objections with the court and serve a copy on all parties.  Such a document should be captioned

12 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13 shall be served and filed within ten days after service of the objections.  The parties are advised

14 that failure to file objections within the specified time may waive the right to appeal the District

15 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16 DATED: 6/17/05

17    /s/ Gregory G. Hollows

18    GREGORY G. HOLLOWS
     UNITED STATES MAGISTRATE JUDGE

19 GGH:009
   dani0400.msj

20

21

22

23

24

25

26